<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN MORRIS, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendants. | Civil Action No. 13-4980 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge**.**

This is a putative class action brought by Plaintiff Karen Morris on behalf of herself and all current and former owners and lessees of 2012 and 2013 BMW motor vehicles equipped with a BMW Navigation System.  Plaintiff alleges, *inter alia*, that BMW concealed certain material facts concerning the design, manufacture, performance history, and propensity for malfunction of the BMW Navigation System during the marketing and sale of same.  Currently before the Court is a motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant BMW of North America LLC ("BMW").  The Court has considered the submissions made in support of and in opposition to BMW's motion, and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, BMW's motion is **granted in part and denied in part.**

## I.    BACKGROUND[1]

On or about August 31, 2012, Plaintiff, a Nevada resident, purchased a new 2012 BMW 5 series Vehicle from an authorized BMW dealership located in Phoenix, Arizona. (Am. Compl., ¶¶ 5, 29).  The Vehicle came equipped with the BMW Navigation System, which Morris purchased at the additional cost of $1,800. (Am. Compl., ¶ 29).  The Amended Complaint alleges that Morris had seen advertisements for BMW vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the internet during the years before she purchased her vehicle in 2012. (Am. Compl., ¶ 28).  Plaintiff alleges that the system features and performance of the BMW Navigation System were frequent advertising themes and that "[t]hose representations about the BMW Navigation System influenced her decision to purchase her Vehicle." (*Id.*).

After purchasing the Vehicle, Plaintiff allegedly experienced persistent problems with her BMW Navigation System including, but not limited to, providing wrong addresses, directing her to the wrong locations, taking lengthy and unnecessary detours and routes, and taking her in the opposite direction. (Am. Compl., ¶ 31).   For example, the Amended Complaint alleges that, on one occasion, the BMW Navigation System led Plaintiff to drive into a wall, forcing her to make a u-turn. (*Id.*).  These problems occurred, according to the Plaintiff, "the majority of the time that she used the BMW Navigation System." (Am. Compl., ¶ 31).

As a result of the problems she was experiencing with the BMW Navigation System, the Amended Complaint alleges that on or about January 7, 2013 and March 18, 2013, Plaintiff took her vehicle into Desert BMW of Las Vegas, an authorized BMW dealer located in Las Vegas, Nevada. (Am. Compl., ¶ 32).  Plaintiff alleges that someone at the dealership "[v]erified [her] complaint, compared [her] vehicle with other similar cars with both 2012 and 2013 map updates

[1] The following relevant facts are presumed to be true solely for purposes of this motion.

and got similar results," and ultimately advised her that there were "no solutions available at this time, possibly with 2014 map update." (*Id*.).

The Amended Complaint further alleges that in or about March 2013, Plaintiff once again called BMW regarding the problems she was experiencing with her BMW Navigation System. (Am. Compl., ¶ 33).  Plaintiff alleges that she spoke with a BMW representative supervisor named "Will" and requested a refund.   (*Id*.).   According to Plaintiff, BMW representative "Will" ultimately rejected Morris's refund request, told her that the problems were caused by the BMW Navigation System maps, not the unit itself, and that the issue was therefore "Tom Tom's problem," not BMW's problem. (*Id.*).

Plaintiff claims that the BMW Navigation System's persistent problems have rendered it useless. (Am. Compl., ¶ 34).  Thus, Plaintiff maintains that she has been forced to stop using the BMW Navigation System. (*Id*.).    The Amended Complaint alleges that "[h]ad those advertisements, statements, or any other of BMW's materials or communications informed Morris of the defective BMW Navigation System, and the lack of any fix, as well as BMW's refusal to remedy the problems, Morris would not have opted to purchase the BMW Navigation System, much less pay the amount she did for it." (Am. Compl., ¶ 35).  Finally, the Amended Complaint alleges that Plaintiff has suffered ascertainable loss as a consequence of BMW's alleged misconduct, including but not limited to the $1,800 she paid to purchase the BMW Navigation System, as well as the diminution in the value of her vehicle as a result of having a defective BMW Navigation System. (Am. Compl., ¶ 36).

In light of the foregoing, Plaintiff filed a Complaint with this Court on August 19, 2013. This Court's jurisdiction is premised on 28 U.S.C. § 1332(d)(2).  Plaintiff filed an Amended Complaint on November 15, 2013.  Plaintiff's Amended Complaint contains the following claims:

(1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, et seq., (2) violation of the Magnuson-Moss Act, 15 U.S.C. §§ 2301-2312, based on written warranty (3) violation of the Magnuson-Moss Act, 15 U.S.C. §§ 2301-2312, based on implied warranty, (4) breach of express warranty, (5) breach of implied warranty of merchantability, (6) violation of the Nevada Deceptive Trade Practices Act ("DTPA"), and (7) unjust enrichment.  Plaintiff seeks to assert the foregoing claims on behalf of:

> All current and former owners and lessees of model year 2012 or 2013 BMW vehicles purchased or leased in the United States that came equipped with the BMW Navigation System Professional ("Class").

(Am. Compl., ¶ 45).  In the alternative, Plaintiff brings this action on behalf of the following proposed sub-class:

> All current and former owners and lessees of model year 2012 or 2013 BMW vehicles purchased or leased in the State of Nevada that came equipped with the BMW Navigation System Professional ("Nevada Sub-Class").

(Am. Compl., ¶ 46).

Defendant BMW now seeks dismissal of the following claims: (1) Plaintiff's consumer fraud claims, and (2) Plaintiff's express warranty claims.  In addition, BMW urges the Court to strike certain class allegations for various reasons.


## II.    LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party."  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  But, "[f]actual allegations must be enough to raise a right to relief above the

4

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts are not required

to credit bald assertions or legal conclusions draped in the guise of factual allegations.  *See In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d  at 1429 (3d Cir. 1997).   "A pleading that offers

'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not

do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 6782 (2009) (quoting *Twombly*, 550 U.S. at 555).  Thus, a

complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 570).


## III.    DISCUSSION

### A.    Consumer Fraud Claim

Defendant BMW moves to dismiss Plaintiff's New Jersey Consumer Fraud Act claim on

the basis that Nevada law applies to Plaintiff's consumer fraud claim.  BMW also moves to dismiss

Plaintiff's Nevada Deceptive Trade Practices claim for failure to the meet the pleading requirement

of Federal Rule of Civil Procedure 9(b).

As a threshold matter, Defendant BMW urges the Court to apply a choice of law analysis

to determine which state's law should apply to Plaintiff's consumer fraud claim.  Based on the

reasons that follow, the Court concludes that it cannot engage in a meaningful choice of law

analysis at this time because of pleading deficiencies in Plaintiff's consumer fraud claims—under

*both* New Jersey and Nevada law.

A federal court sitting in diversity applies the choice of law principles of the forum state.

*See Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496–97 (1941); *Warriner v. Stanton*, 475

F.3d 497, 499–500 (3d Cir. 2007). In *P.V. v. Camp Jaycee*, the New Jersey Supreme Court held

that the "most substantial relationship" test enunciated in the Restatement (Second) of Conflict of Laws § 188 applies to choice of law disputes arising under both contract and tort law. 197 N.J. 132, 136 (2008). New Jersey's "most significant relationship" test consists of two prongs. First, a court must examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. *Id.* at 143 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If there is no actual conflict, the analysis ends and the court applies the law of the forum state. *See In re Ford Motor Co.,* 110 F.3d 954, 965 (3d Cir.1997); *Rowe v. Hoffman—La Roche, In*c., 189 N.J. 615, 621 (2007). However, if a conflict is found, the Court must weigh the factors enumerated in the Restatement section corresponding to the plaintiff's cause of action, in this case, § 148 of the Restatement (Second) of Conflict of Laws since Plaintiff's NJCFA claim sounds in fraud or misrepresentation. Section 148 contemplates two scenarios in which a plaintiff asserts a claim for fraud or misrepresentation. The first scenario involves misrepresentation claims in which both the alleged harm suffered by a plaintiff and the action in reliance of any false representations occur in a single state. The second scenario contemplated under § 148 is where a plaintiff's action in reliance takes place in a state other than where the false representations were made. Restatement (Second) of Conflict of Laws, § 148 (1971). In the latter case, where two or more states are involved, the Restatement provides:

> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
> (a) the place, or places, where the plaintiff acted in reliance upon the defendants' representations,
>
> (b) the place where the plaintiff received the representations,

6

(c) the place where the defendant made the representations,

(d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under the contract which he has been induced to enter by the false representations of the defendant.

*Id.,* § 148(2). This test is applied "on an issue-by-issue basis" and "is qualitative, not quantitative." *Camp Jaycee,* 197 N.J at 143.

Defendant urges the Court to engage in a choice of law analysis at this time because it maintains that there is an actual conflict between the NJCFA and the NJDTPA. Plaintiff opposes Defendant's request, arguing that a choice of law analysis would be premature at this time and, in any event, New Jersey law should apply to Plaintiff's consumer fraud claim inasmuch as the State of New Jersey has the most significant relationship with this case.

Turning now to Plaintiff's Amended Complaint, Plaintiff alleges—in a conclusory fashion—that certain unspecified "BMW representatives working in New Jersey and/or directly reporting to superiors situated in New Jersey" made certain "representations and acts of concealment which are the subject of this lawsuit." (Am. Compl., ¶ 6). This statement is entirely conclusory and thus does not benefit from the presumption of truth. For example, Plaintiff does not allege *what* misrepresentation was made, *when* it was made, or by *whom* it was made. Absent such factual content, the Court has no reasonable basis on which to infer that the representations and/or actions of omission by BMW that form the basis of Plaintiff's claims emanated from the State of New Jersey. Similarly, Plaintiff does not allege *where* she was when she received those alleged misrepresentations. Nor does she allege where, in particular, she acted in *reliance* upon

7

the alleged misrepresentations by BMW.   In light of these pleading deficiencies—which, as discussed below, also affect the viability of Plaintiff's consumer fraud claims—the Court cannot engage in a meaningful choice of law analysis at this time.   Thus, the Court declines to rule on the choice of law issue at this time and will instead address whether Plaintiff has alleged a facially plausible claim of consumer fraud under either New Jersey or Nevada law.

**1.     NJCPA**

Count One of Plaintiff's Amended Complaint alleges, in pertinent part, that:

> BMW has engaged in deceptive practices in the sale of the defective BMW Navigation System, including: (1) selling the defective BMW Navigation System despite knowing of its propensity to fail and malfunction and the absence of any fix for the problems; (2) failing to disclose and/or concealing this known defect and the safety risks relating thereto; (3) misrepresenting the abilities and qualities of the BMW Navigation System in its marketing and advertising; and (4) failing to disclose and/or intentionally concealing that the BMW Navigation System was not of merchantable quality.

(Am. Compl., ¶ 60).   The Amended Complaint further alleges that had BMW disclosed all material information regarding the BMW Navigation System to Plaintiff, Plaintiff would not have purchased the BMW Navigation System. (Am. Compl., ¶ 65).   Finally, Count One alleges that "the foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiff and Class members to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase, at a premium price, the BMW Navigation System, as well as diminution in the value of the Subject Vehicles as a result of having a defective BMW Navigation System, which is incapable of effective repair . . . ." (Am. Compl., ¶ 66).

To state a claim pursuant to the New Jersey Consumer Fraud Act ("CFA"), a plaintiff must generally allege three elements: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs' ascertainable loss. *Int'l*

*Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.,* 192 N.J. 372, 929 A.2d 1076 (2007) (internal quotations omitted). The broad definition of unlawful practice covers affirmative acts and knowing omissions, as well as regulatory violations. *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 647 A.2d 454 (1994). When the alleged unlawful act consists of an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act.  However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Id.* at 17–18.

While a "breach of warranty or contract is unfair to the non-breaching party," a breach of warranty alone is not a per se unlawful practice. *Id.*  A claim under the NJCFA requires more; it requires that a plaintiff allege "substantial aggravating circumstances." *Suber v. Chrysler Corp*., 104 F.3d 578, 587 (3d Cir.1997); *see also Cox*, 647 A.2d at 462. To meet this standard, a plaintiff must demonstrate that the business behavior in question "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,* 139 N.J. 392, 655 A.2d 417, 430 (1995).

Additionally, to adequately state a claim under the CFA, not only must a plaintiff allege facts sufficient to establish the aforementioned elements, but such allegation must be plead with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See Rait v. Sears, Roebuck and Co*., No. 08–2461, 2009 WL 250309, at *4 (D.N.J. Feb.3, 2009); *Parker v. Howmedica Osteonics Corp.,* No. 07–2400, 2008 WL 141628, at *3 (D.N.J. Jan.14, 2008).  These requirements may be satisfied "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Lum v. Bank of Am*., 361 F.3d 217, 224 (3d Cir. 2004) (internal quotations omitted).

The Court has carefully considered the factual allegations underlying Plaintiff's NJCFA claim.    To the extent Plaintiff's NJCFA claim is premised on alleged affirmative misrepresentations made by BMW in its marketing and advertising concerning the abilities and qualities of its Navigation System, this aspect of Plaintiff's NJCFA fails to meet even the basic Rule 8(a) pleading standard inasmuch as the Amended Complaint contains no facts to bolster this otherwise conclusory claim.    For example, Plaintiff fails to allege which particular representations—or misrepresentations—were made by BMW in which particular piece of marketing or advertising.  She fails to allege when she personally saw this marketing and/or advertising by BMW, or any other facts that would otherwise allow the Court to draw the reasonable inference that Plaintiff was personally subjected to BMW's alleged unlawful conduct in this regard.  Absent such factual content, the Court cannot draw the reasonable inference that BMW has engaged in the affirmative act that Plaintiff alleges.

To the extent Plaintiff's NJCFA claim is premised on BMW's failure to disclose and/or concealment of the alleged defect in and/or safety risks associated with its Navigation System, such claim also lacks facial plausibility inasmuch as Plaintiff alleges no facts to substantiate the theory that anyone in particular at BMW acted with *knowledge* in failing to make such disclosure. *See Cox,* 138 N.J. at 17–18.  In other words, Plaintiff fails to allege any facts in support of the theory that anyone in particular at BMW *knew* that the Navigation System was defective but nevertheless consciously chose to conceal same from Plaintiff.    To the contrary, Plaintiff's Amended Complaint alleges, in pertinent part:

> Prior to and during the course of marketing and selling the Subject Vehicles to Plaintiff and Class members, however, BMW, including, inter alia, BMW's product quality division, customer and dealer relations division, national technical specialists, sales division, marketing division, and after-sales service division, **knew that the BMW Navigation System was defective based upon,**

**inter alia, BMW's own pre- and post-release testing, industry testing, warranty data, consumer complaints BMW received directly and/or that were posted on public online forums, and information received from BMW dealers, as well as through sources not now available to Plaintiff. BMW further knew that there was no fix to eliminate or substantially reduce the failures and malfunctions of the BMW Navigation System, and that there continues to be no fix to date.**

(Am. Compl., ¶ 16) (emphasis added).  Plaintiff's conclusory allegation that BMW's product quality division, customer and dealer relations division, national technical specialists, sales division, marketing division, and after-sales service division, knew that the BMW Navigation System was defective is insufficient to meet the Rule 8(a) pleading standard.  S*ee generally Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[2]  Stated differently, Plaintiff has failed to plead sufficient facts in support of this statement that would allow this Court to draw the reasonable inference that anyone in particular, acting on behalf of BMW, possessed knowledge about the defects in the

---

[2] The Supreme Court, in *Iqbal*, made clear that:

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But "generally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8.  And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

*Iqbal*, 129 S.Ct. at 1954; *see generally In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 282 (3d Cir. 2006) ("[P]leading of scienter sufficient to satisfy Rule 9(b) 'may not rest on a bare inference that a defendant "must have had" knowledge of the facts' or 'must have known' of the fraud given his or her position in the company.").

BMW Navigation System at any time—much less, at any time prior to Plaintiff's purchase of the vehicle—*and* intentionally failed to disclose same to Plaintiff. *See, e.g., United States, ex rel. Pilecki-Simko v. Chubb Inst*., 443 Fed. Appx. 754, 760–761 (3d Cir. 2011) (finding insufficient facts to support element of knowledge where the complaint alleged, generally, that "Chubb . . . knowingly uses . . . false records or statements . . . ."); *see generally In re Suprema Specialties, Inc. Sec. Litig*., 438 F.3d 256,282 (3d Cir. 2006) ("A pleading of scienter sufficient to satisfy Rule 9(b) 'may not rest on a bare inference that a defendant "must have had" knowledge of the facts' or 'must have known' of the fraud given his or her position in the company.").

To the extent Plaintiff alleges that someone at BMW possessed such knowledge by virtue of BMW's "own pre-and post-release testing, industry testing, warranty data, consumer complaints BMW received directly and/or that were posted on public online forums, and information received from BMW dealers, as well as through sources not now available to Plaintiff," such allegations are entirely devoid of any substantive factual content. Absent such factual content, Plaintiff has failed "to raise [her] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This Court has previously held that:

> The various and disparate internet complaints relied on here are not sufficient to support Ms. Rait's broad conclusion regarding Sears' knowledge and intent even if this Court were to find internet complaints valid support as a general proposition, which it does not do.

*Rait v. Sears, Roebuck and Co*., No. 08-2461, 2009 WL 2488155, at *3 (D.N.J. Aug. 11, 2009); *see also Wiseberg v. Toyota Motor Corp*., No. 11-3776, 2012 WL 1108542, at *13 (D.N.J. March 30, 2012) (striking list of anonymous internet complaints from plaintiff's complaint and noting that "it is not apparent from the Complaint in the instant case that Defendant knew of the consumer complaints on the website, particularly since Plaintiffs cannot point to other sources as having

given Defendant notice thereof.  While anonymous Internet complaints could be relevant to the issue of knowledge, it must be shown that Toyota was aware of these complaints.").   Similarly, here, Plaintiff's generalized reference to an unspecified number of consumer complaints on a "public online forum" and/or reference to three alleged complaints[3] about the Navigation System filed by consumers on http://autosmsn.com and http://f10.5post.com—without more—is insufficient to support Plaintiff's broad conclusion regarding, *inter alia,* BMW's knowledge and/or intent.  *See Rait,* 2009 WL 2488155, at *3; *Wiseberg,* 2012 WL 1108542, at *13.

In light of the foregoing, the Court concludes that Plaintiff has failed to allege the type of aggravating circumstances required to state a claim under the NJCFA.  For example, she does not allege that BMW had issued a technical bulletin noting problems with the Navigation System yet denied such problems to Plaintiff, *see Suber,* 104 F.3d at 587; that BMW violated some independent statute in the way it marketed its Navigation System or effected its repairs*, see id.* and *New Mea Constr. Corp. v. Harper,* 203 N.J. Super. 486, 497 A.2d 534, 542–43 (App. Div. 1985); that the BMW repair person took the BMW Navigation system apart then told Plaintiff that the charges would be much higher and that if unpaid, he would not reconnect her BMW Navigation system, *see Hyland v. Zuback,* 146 N.J. Super. 407, 370 A.2d 20, 22–25 (App. Div. 1976); or that BMW recommended unnecessary repairs or charged for repairs that were not made, *see Turf,* 655 A.2d at 432.  She only has alleged that she purchased a product that did not function properly and was not properly repaired.  Without more, such allegations do not show behavior that so "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf*, 655 A.2d at 430.   Plaintiff's NJCFA claim is therefore dismissed without prejudice.

---

[3] Only two of the alleged online complaints were made before Plaintiff purchased her vehicle (in August 2012). *See* Am. Compl., ¶ 18.

2.   **NDTPA**

Even if the Court were to find that Nevada law should apply to Plaintiff's consumer fraud claim, the Court finds that the same pleading deficiencies that underlie Plaintiff's NJCFA claim warrant dismissal, *without* prejudice, of Plaintiff's NDTPA claim.   In particular, the Nevada Deceptive Trade Practice Act ("NDTPA"), N.R.S. § 598.0923, provides, in relevant part, that:

> A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she **knowingly** … Fails to disclose a material fact in connection with the sale or lease of goods or services.

N.R.S. § 598.0923 (emphasis added).  As stated above, Plaintiff alleges no facts in support of the theory that anyone acting on behalf of BMW possessed knowledge of the alleged defects in the BMW Navigation System and failed to disclose same to Plaintiff.  Absent such factual content, Plaintiff has failed to state a claim of consumer fraud under the NDTPA that is plausible on its face.  *See generally In re Suprema Specialties, Inc. Sec. Litig*., 438 F.3d at 282 ("A pleading of scienter sufficient to satisfy Rule 9(b) 'may not rest on a bare inference that a defendant "must have had" knowledge of the facts' or 'must have known' of the fraud given his or her position in the company.").

For the reasons discussed above, Defendant's motion to dismiss Plaintiff's consumer fraud claim is granted.  Count One is therefore dismissed *without* prejudice.

B.   **Express Warranty Claims**

Plaintiff asserts two claims for breach of express warranty: breach of written warranty in violation of the Magnuson-Moss Warranty Act (Count Two), and breach of express or written warranty under state law (Count Four).

14

This Court has previously held that Magnuson-Moss claims based on breaches of express and implied warranties under state law depend upon those state law claims. *See Cooper v. Samsung Electronics Am., Inc.,* No. 07-3853, 2008 WL 4513924, *6 (D.N.J. Sept. 30, 2008); *Cooper v. Samsung Electronics Am., Inc*., 374 Fed. Appx. 250, 254 (3d Cir. 2010) ("Cooper's Magnuson-Moss claim is based upon his state law claims of breach of express and implied warranties. Since the District Court correctly dismissed both of those claims, Cooper's Magnuson-Moss claim was also properly dismissed.").

Having carefully reviewed Counts Two and Four of the Amended Complaint, it is clear to the Court that both claims are premised on a state law claim of breach of express warranty. In other words, both claims are premised on Defendant's alleged breach of the written warranty ("Warranty") it provided to Plaintiff. *Compare* Am. Compl., ¶¶ 72-76 *with* ¶¶ 109-113. Thus, the Court will turn first to Plaintiff's state law breach of express warranty claim.

Plaintiff alleges that she purchased her vehicle in August 2012 (Am. Compl., ¶¶ 28, 29). According to the Amended Complaint, BMW provided Plaintiff with a "four-year/50,000-mile, bumper-to-bumper warranty ("Warranty"), which allegedly provided that BMW "will . . . either repair or replace the defective part(s)." (Am. Compl., ¶¶ 109-11). According to the Amended Complaint, Plaintiff's Vehicle came equipped with the BMW Navigation System, for which Plaintiff paid an addition $1,800. (Am. Compl., ¶ 29). She further alleges that she began experiencing problems with the Navigation System, took her Vehicle in for service at BMW of Las Vegas for problems associated with her Navigation System in January 2013 and March 2013, and that the dealership "verified" her complaint but told her that "there are 'no solutions available at this time, possibly with 2014 map update.'" (Am. Compl., ¶ 32). Plaintiff further alleges that she called BMW in March 2013 to request a refund for her allegedly defective BMW Navigation

System, and that her refund request was denied by a BMW representative by the name of "Will," who advised her that "the problems were caused by the BMW Navigation System maps, not the unit itself, and that the issue was therefore 'Tom Tom's problem,' not BMW's problem." (Am. Compl., ¶ 33). Thus, according to the Amended Complaint, "BMW has breached its express Warranty . . . by . . . failing to repair or replace the defect in and/or defective parts in the BMW Navigation System, or to replace the BMW Navigation System itself." (Am. Compl., ¶ 113).

In support of its motion, Defendant attaches what it purports to be a copy of the relevant Warranty. *See* Dalton Decl., Ex. A. The Court will consider this document inasmuch as Plaintiff does not dispute its authenticity and the Warranty is not only referenced in, but is, in fact, integral to Plaintiff's Amended Complaint as a whole. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("A 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.' ").

Pursuant to the Warranty:

> BMW of North America, LLC (BMW NA) warrants 2012 U.S.-specification vehicles distributed by BMW NA or sold through the BMW NA European Delivery Program against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser.
>
> ***
>
> To obtain service under this warranty, the vehicle must be brought, upon discovery of a defect in material or workmanship, to the workshop of any authorized BMW center in the United States or Puerto Rico, during normal business hours. The BMW center will, without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts.

(Dalton Decl., Ex. A at 22). Defendant moves to dismiss Plaintiff's breach of express warranty claims on the basis that "Plaintiff does not contend that the Navigation System itself—the unit, the

16

hardware—does not work; rather, she claims that the navigation program—the software—contains a defect that causes it to provide erroneous direction.  But a defect in software is a design defect, not a defect in materials or workmanship." (Def. Br. at 12).

To establish a breach of express warranty claim under New Jersey law,[4] a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).  Defendant does not claim that Plaintiff has failed to properly allege the existence of damages and/or that she performed her obligations, if any, under the Warranty.  Rather, the crux of Defendant's argument is that Plaintiff has failed to allege a facially plausible breach because Plaintiff's gripe stems from a defect in the software—or design—of the Navigation System, which is not—according to Defendant—covered under the Warranty.  In support of its position, Defendant relies on this Court's ruling—and the Third Circuit's affirmance of—*Cooper v. Samsung Elecs. Am., Inc*.  There, the Court held that:

> [T]he plain language of the Warranty covers only "manufacturing defects in materials and workmanship encountered in normal ... noncommercial use of this product."  Cooper does not allege a manufacturing defect; indeed, he agrees his TV was manufactured as designed.  His complaint is that the design deviated from Samsung's advertisements and packaging.  This is not a "manufacturing defect" that would be covered by this warranty.  Given the foregoing, Cooper cannot prevail under the Warranty.

*Cooper v. Samsung Elecs. Am., Inc.,* 374 Fed. Appx. 250, 253-254 (3d Cir. 2010).

---

[4] Since this Court exercises its diversity jurisdiction over this action, the law to be applied is generally that of the forum state—New Jersey. *See Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995).  Because there is no objection to the contrary, the Court will thus apply New Jersey law in assessing the facial plausibility of Plaintiff's breach of express warranty claims.

The Court has carefully considered Defendant's arguments and finds them to be unconvincing at this stage of the litigation.  First, unlike in *Cooper*, Plaintiff here does not concede that the Navigation System was manufactured as designed.  To the contrary, Plaintiff alleges that, pursuant to her BMW Owners' Manual: "The navigation system can determine the precise position of the vehicle, with the aid of satellites and vehicle sensors, and can reliably guide you to every entered destination." (Am. Compl., ¶ 13).  Plaintiff further alleges that, notwithstanding its purported function, the Navigation System, as a whole, "does substantially fail and malfunction, because of a defect in the BMW Navigation System that causes it to consistently generate incorrect directions, identify wrong current locations, not locate streets and/or addresses, and suddenly reset, among many other problems." (Am. Compl., ¶ 14).

Whether the alleged defect in the Navigation System is caused by defective hardware or software, a design defect or a defect in "materials or workmanship"[5] remains to be seen.  Suffice it to say that *if* Plaintiff succeeds in proving that the Navigation System contained a defect "in materials or workmanship," then BMW's failure to, *inter alia*, repair or replace the defective part(s) could constitute a breach of the Warranty.  Plaintiff has therefore stated a facially plausible state law breach of warranty claim (Count Four).  Because Plaintiff's Magnuson-Moss Warranty Act claim (Count Two) is premised entirely on the state law breach of warranty claim,[6] Defendant's motion to dismiss Counts Two and Four is denied.

---

[5] The Court declines to construe the terms "materials or workmanship" in the context of this particular Warranty at this stage of the litigation, and based on the current record.  *See generally Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.,* 508 Fed. Appx. 180, 184-185 (3d Cir. 2012) (affirming district court's grant of summary judgment in favor of supplier and explaining that, under Pennsylvania law, "[a] course of performance. . . between the parties . . . is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement and may supplement or qualify the terms of the agreement.").

[6] Defendant does not dispute this.

18

**D.      Class Allegations**

Next, Defendant urges the Court to dismiss Plaintiff's class-action allegations.   In particular, Defendant argues: (1) Plaintiff cannot pursue a nationwide consumer-fraud class action under the law of New Jersey or any other single state; (2) Plaintiff cannot pursue a nationwide breach of warranty class action under the law of New Jersey or any other single state; (3) Plaintiff cannot pursue a nationwide unjust enrichment class action under the law of New Jersey or any other single state; (4) Plaintiff cannot pursue a single state class action because she is not a member of the proposed Nevada sub-class; and (5) Plaintiff cannot maintain a single state class action under the NDTPA.

Federal Rule of Civil Procedure 12(f) permits a party to strike "any redundant, immaterial, impertinent or scandalous matter" from the pleadings.  Motions to strike are generally disfavored and are usually denied "unless the allegations have no relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Kim v. Baik*, Civ. No. 06–3604, 2007 WL 674715, at *5 (D.N.J Feb. 27, 2007) (quoting *River Road Dev. Corp. v. Carlson Corp.,* Civ No. 89–7037, 1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)).

The Court has carefully considered Defendant's arguments.  Defendant does not argue that any of the foregoing class action allegations are "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  Nor does Defendant cite to any binding legal authority requiring—or even warranting—the striking of such class allegations at the motion to dismiss stage.  To the contrary, with the exception of one argument—pertaining to the viability of Plaintiff's proposed Nevada sub-class—the Court concludes that the arguments raised by

Defendant in support of its request to strike Plaintiff's class action allegations are entirely premature given the early stage of this litigation.

For example, as to Count One, the Court has already determined that, based on the facts pled, the Court has no reasonable basis on which to infer that the representations and/or actions of omissions by BMW that form the basis of Plaintiff's claims emanated from the State of New Jersey. Absent—*at a minimum*—such factual content, the Court is in no position to engage in the type of choice of law analysis engaged in by the Third Circuit in *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 210 (3d Cir. 2013)—which is relied upon by Defendant. In that case, the Third Circuit affirmed the district court's grant of defendant's motion for summary judgment as to Plaintiff's NJCFA claim after concluding that the factors enumerated in subsection (2) of § 148 of the Restatement (Second) of Conflict of Laws point in favor of applying South Carolina law.[7] The Court has already determined that it cannot, based on the current record, engage in a meaningful choice of law analysis at this time. It naturally follows that the Court cannot

---

[7] In particular, the Court held:

> While, to be sure, New Jersey has an interest in deterring misconduct by corporations headquartered within its borders, it is far from clear that this interest would be sufficient to outweigh other significant contacts with a plaintiff's home state. New Jersey's deterrent interest might well be served by actions involving in-state plaintiffs or actions involving additional contacts within New Jersey without opening the floodgates to nation-wide consumer fraud class actions brought by out-of-state plaintiffs involving transactions with no connection to New Jersey other than the location of the defendant's headquarters.

*Maniscalco*, 709 F.3d at 210.

reasonably determine at this time whether Plaintiff can pursue claims of unjust enrichment, breach of express and written warranty, and/or violation of the NJCFA on a nationwide class action basis.

Having said that, the Court agrees with Defendant that "[i]t is axiomatic that the lead plaintiff must fit the class definition." *Hayes v. Wal-Mart Stores, Inc.* 725 F.3d 349, 360 (3d Cir. 2013). Thus, Plaintiff cannot represent a sub-class of whom she is not a part. *See, e.g., Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962) ("[Plaintiffs] cannot represent a class of whom they are not a part."). Although Plaintiff purports to represent a sub-class of "[a]ll current and former owners and lessees of model year 2012 or 2013 BMW vehicles purchased or leased in the State of Nevada that came equipped with the BMW Navigation System Professional ('Sub-Class')," (Am. Compl., ¶ 46), Plaintiff did not purchase her vehicle in the State of Nevada, (Am. Compl., ¶ 5). In light of the foregoing, the Court grants Defendant's motion to strike allegations pertaining to Plaintiff's proposed Sub-Class inasmuch as she was not a member of the Sub-Class. *See Hayes,* 725 F.3d at 360; *see also Bailey,* 369 U.S. at 32–33. Such allegations, including but not limited to Count Six in its entirety, are hereby dismissed without prejudice.

### IV.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part. In particular, Defendant's motion to dismiss Plaintiff's consumer fraud claims is granted; such claims are dismissed *without* prejudice. Defendant's motion to dismiss Plaintiff's express warranty claims is denied. And finally, Defendant's request to strike certain class allegations is granted only as to those allegations pertaining to Plaintiff's Nevada Sub-Class. Plaintiff may file a Second Amended Complaint that cures the pleading deficiencies discussed herein on or before March 31, 2014. Plaintiff's failure to do so will result in dismissal of Plaintiff's consumer fraud

claims and Plaintiff's Nevada Sub-Class allegations *with* prejudice upon application by the Defendant.

An appropriate Order accompanies this Opinion.

s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE

Date: February 21, 2014

22